GALLIAN, Tutor of the Minor Heirs of HUGHES, v. Cox, Curator of STAFFORD et als.

B. opened the succession of A. and qualified as administrator in the parish of Caddo. B. died and C. opened his succession, and qualified as curator in the parish of Sabine. The minor children of A. through a dative tutor, sued C. as curator, in the parish of Sabine, for the inheritance coming from their father A. The defendant contended that the action should, under Art. C. P., 988 and 1008, have been brought in the parish of Caddo, where A. died; and that the action should have been for a settlement of the account of B. as administrator. But *held:* that the action was properly brought.

Parol evidence is not admissible to prove that a judgment of homologation was rendered at chambers.

An administrator will not be permitted to reap advantage from his own illegal acts.

APPEAL from the District Court of the Parish of Sabine, *Bullard,* J. *Elam & Hamilton,* for plaintiff. *Hyams, J. B. Smith & Safford,* for defendants and appellants. *Davidson,* for absent heirs.

BUCHANAN, J. *Walter Hughes* died on the parish of Caddo, in the year 1840, leaving a widow and two minor children. His estate was administered in said parish by *Thomas S. Stafford,* who rendered an account of his administration which was homologated.

*Stafford* married the widow of *Hughes* and moved to the parish of Sabine. Mrs. *Stafford* (formerly Mrs. *Hughes*) died; and after her *Stafford* himself died in the parish of Sabine, in the year 1850. There was no issue of the marriage between *Stafford* and his wife.

*Stafford's* estate is in course of administration in the parish of Sabine. His heirs are his father, brothers and sisters, residing in Ohio.

*Walter Hughes's* minor children bring this suit, through their dative tutor, against the curator of *Stafford,* and against his heirs, represented by their attorney in fact, who is also assignee of one of the heirs.

The first defence made to this action is a plea to the jurisdiction. It is contended that, inasmuch as the estate of *Hughes* was opened in Caddo parish, the only proper suit by any party claiming his inheritance is a suit for an account, to be brought before the court who appointed the administrator of *Hughes's* estate. The articles 988 and 1008 of the Code of Practice are relied upon in support of this plea.

We think those articles do not apply to this case. First. Because *Stafford,* the administrator of *Hughes,* is dead, and his succession opened in a different parish from that of Caddo. Secondly. Because *Stafford* did render an account of his administration of the estate of *Hughes,* which was homologated. In fact,

he rendered two accounts, which we will more particularly notice when we come to the merits of the case.

The next plea of defendants is, that the form of the action is unwarranted by law. The plaintiff sets forth that the inventory of the estate of *Hughes* amounted to a certain sum; on which, deduction being made of the debts due and paid, according to an account filed by *Stafford*, as administrator, there would remain a balance due them, which they claim.

There are other claims embraced in the petition, but this is the only one necessary to be considered in connection with the objection of defendants. That objection is, that the suit should be for an account, and is based upon the articles already cited of the Code of Practice. We think the objections unfounded.

The next objection of defendants is, that the effect of the present suit will be to ratify a sale made, without legal formalities, of the immovables and slaves of the ancestor of the minors whom the petitioner represents; and such ratification cannot be made by the tutor to the prejudice of his minors, neither would it be binding on the minors.

This argument is a manifest perversion of the plaintiff's pleadings. The sale of *Hughes's* property alluded to, which was made on the 4th March, 1843, and at which the whole of the property of *Hughes* was knocked off to *Stafford*, the administrator, item by item, is so far from being adopted by plaintiff that he utterly repudiates it, and holds the estate of *Stafford* liable for the amount of the inventory first made by him, instead of the amount of this pretended probate sale, which is much less than one-half of the said inventory.

Upon the merits we think the District Judge has arrived at a sufficiently accurate conclusion with regard to the amount of the rights of the minors of *Hughes* against the estate of *Thomas S. Stafford*, growing out of the administration of the estate of their father. The counsel of appellant contends that the liability of *Stafford's* estate should be measured by the second inventory of *Hughes's* estate instead of the first. But this we cannot agree to. The facts are simply these. Immediately after *Walter Hughes's* death, in November, 1840, *Thomas S. Stafford* presented his petition for administration, and had an inventory of *Hughes's* estate made by the Parish Judge, (on the 9th Nov., 1840,) the amount of which inventory was six thousand three hundred and sixty-two dollars and twenty-nine cents. In November, 1841, *Stafford* filed an account of his administration, and a list of the debts paid and unpaid of the estate. In this account he credits the estate of *Hughes* with the full amount of the inventory, - - - - - - - - - - - $6,362 29
and debits it with the payments and the debts still unpaid; total of debits, - - - - - - - - - - 2,908 69
_____

Balance in favor of the estate of *Hughes*, according to this account, $3,453 60

This account was published and in due course, judgment of homologation was rendered upon it, which was signed on the 24th January, 1842. Nearly a year after this judgment of homologation, however, *Stafford* presents a petition to the court alleging that the appraisement of the property of *Hughes* in the first inventory had been too high, and praying for a new inventory and appointment, which was accordingly made on the same day (7th November, 1842.) The amount of this inventory, which was composed of the same items as the former one, was $4,044 11, or something less than two-thirds of the former appraisement.

The record shows that *Stafford* had already provided himself, the day before this inventory, or on the 6th November, 1842, with an order for the sale of all the property, real and personal, of *Hughes's* estate, for cash; which order was granted at chambers, upon a petition representing it to be necessary to sell all the property to discharge the debts of the estate. And note, that out of the list of debts of this estate contained in the homologated account mentioned above, which list amounted to $2,908 69 in all, two of the items, respectively, $150 and $1845, or collectively, $1695, were charged as due *Thomas S. Stafford*, leaving, according to that account, but $913 69 due to all other persons besides himself.

The next thing that this record shows is the sale of all the real estate, slaves and personal effects, on the 4th March, 1843, for cash. The only purchaser was *Thomas S. Stafford* himself, the administrator, and the total amount of sales was two thousand six hundred and forty-two dollars.

There next appears an account of administration of *Hughes's* estate, of which the debits and credits balance each other within a few dollars, and a mass of vouchers annexed. The only evidence of the filing of this account is contained in a publication in the Caddo Gazette, of date the 23d April, 1843, by which the Clerk of the Court of Probates of the parish of Caddo announced the filing on that day of a tableau and account by *Thomas S. Stafford* and *Christiana Hughes*, administrators of the succession of *Walter Hughes*, and called upon all whom it might concern to make opposition within ten days, or that the said account and tableau would be homologated and the administrators discharged.

This document, the newspaper notice, is endorsed by the Clerk of the Probate Court of Caddo, " filed Oct. 29th, 1845," and here the record of the succession of *Hughes* ends. But there is an attempt to prove by parol that there was a judgment of homologation rendered at chambers, in October, 1845. Such proof is clearly inadmissible. But in the present case, more particularly, were there a record judgment of homologation of this pretended account, it would not avail; inasmuch as we view the amended inventory of the 7th November, 1842, the order of sale of the same day and the sale of the 4th March, 1843, as nullities. Every step of those proceedings shows a determination of *Stafford* to appropriate to himself the property of *Hughes*. To accomplish this end the forms of law are entirely disregarded and even his own account of November, 1841, and the judgment of homologation of January, 1842, therefore, are treated by him as if they had no existence.

To exhibit the illegality of the proceedings in a still stronger light, it must be observed that *Stafford* was under tutor, duly qualified, of the minors of *Hughes*.

We think that, in strict justice, the plaintiff would be entitled to a somewhat larger sum than is allowed by the judgment of the court below, but as there is no prayer for an amendment by the appellee, we will affirm it as it stands.

Judgment affirmed, with costs.